# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

FRANZ HARDIN,
:
    Petitioner,                                Case No. 3:09-cv-019

:        District Judge Thomas M. Rose
  -vs-                               Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
  Institution,
:
    Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 3) to the Magistrate Judge's Report and Recommendations (Doc. No. 2), recommending this case be dismissed with prejudice. The General Order of Reference for the Dayton location of court permits a magistrate judge to reconsider decisions or reports and recommendations when objections are filed.

Petitioner pleads two grounds for relief:

> **Ground One**: Due process violation in imposing sentence enhanced beyond statutory maximum based on *ex post facto* effect of judicial legislation.
>
> **Supporting Facts:** Maximum statutory sentence was three years concurrent (not counting three year term for specification based on other unaffected statutes). This maximum was exceeded based upon state supreme court decision which had ex post facto effect of enlarging the otherwise statutory maximum sentence beyond three years, despite clear legislative intent otherwise; Ohio has no sentencing "range".

> **Ground Two:** Due process violation in imposing consecutive terms without subject matter jurisdiction to do so.
>
> **Supporting Facts:** Trial court imposed consecutive terms of ten and three years. No statutes exist under Ohio law following *State v. Foster* decision that vest subject matter jurisdiction in a trial court to impose consecutive terms. [Specification is separate and consecutive under separate statute.]

(Petition, Doc. No. 1.)

### Ground One

Petitioner was sentenced January 31, 2006, about a month before the Ohio Supreme Court decided *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006). In his first ground for relief, Petitioner argues that *Foster* violates the Due Process Clause of the Fourteenth Amendment because it has the *ex post facto* effect of increasing the sentence which Ohio trial courts can impose by eliminating the requirement that they make specific findings to justify those sentences.

The Magistrate Judge recommended denying the first ground for relief because this Court had already decided that the remedy portion of *Foster* – which severed the unconstitutional portions of Senate Bill 2 – did not have an unconstitutional *ex post facto* effect, citing *Smith v. Cook*, Case No. 3:08-cv-107 (S.D. Ohio Aug. 27, 2008)(Merz, M.J.); *Parker v. Warden*, 2008 WL 4547490 (S.D. Ohio, Oct. 10, 2008)(Rice, J.)

Petitioner objects that stare decisis should not apply here because the two prior decisions were wrong. Of course it is true that this Court is not legally obligated to follow its own prior decisions, although failure to do so does raise questions about equal treatment of similarly situated

persons when the precedent is so recent. However, having participated in creation of the two precedential cases, the Magistrate Judge believes they were correctly decided, based on the following reasoning.

Petitioner contends the Magistrate Judge misconstrued his first ground for relief as made under the Ex Post Facto Clause "when in fact, it is a Due Process claim wherein judicial legislating <u>resulted</u> in an ex post facto effect." (Objections, Doc. No. 3, at 2.) Petitioner relies on *Rogers v. Tennessee*, 532 U.S. 45 (2001), and *Bouie v. City of Columbia*, 378 U.S. 347 (1964). In *Rogers* the Tennessee Supreme Court, as an act of common-law lawmaking, (1) abolished the common-law rule that the death of an assault victim within a year and a day after the assault is a prerequisite to a homicide prosecution and (2) applied the abolition to uphold the murder conviction in that case where death occurred fifteen months after the assault. The United States Supreme Court upheld the conviction, holding that the retroactive abolition of the year-and-a-day rule did not violate Rogers' due process rights. The Court distinguished its prior decision in *Bouie v. City of Columbia*, 378 U.S. 347 (1964), and held that the Due Process Clause does not incorporate as to state judicial decisionmaking all the restrictions imposed on state legislatures by the *Ex Post Facto* Clause. In *Bouie*, the Court had struck down as unconstitutional a new judicial construction of a trespass statute which applied it to persons who failed to leave a store after notice, as opposed to the prior construction, in which it applied only to those who received notice prior to entry.

In *Rogers*, the Court described the situations to which it had applied *Bouie*:

> Those decisions instead have uniformly viewed *Bouie* as restricted to its traditional due process roots. In doing so, they have applied *Bouie's* check on retroactive judicial decisionmaking not by reference to the *ex post facto* categories set out in *Calder [v. Bull,* 3 Dall. 386, 1 L. Ed. 648 (1798)], but, rather, in accordance with the more basic and general principle of fair warning that *Bouie* so clearly articulated.

> See, e.g., *United States v. Lanier*, 520 U.S. 259, 266, 137 L. Ed. 2d 432, 117 S. Ct. 1219 (1997) ("Due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope"); *Marks v. United States*, 430 U.S. at 191-192 (Due process protects against judicial infringement of the "right to fair warning" that certain conduct will give rise to criminal penalties); *Rose v. Locke*, 423 U.S. 48, 53, 46 L. Ed. 2d 185, 96 S. Ct. 243 (1975) (percuriam) (upholding defendant's conviction under statute prohibiting "crimes against nature" because, unlike in *Bouie*, the defendant "[could] make no claim that [the statute] afforded no notice that his conduct might be within its scope"); *Douglas v. Buder*, 412 U.S. 430, 432, 37 L. Ed. 2d 52, 93 S. Ct. 2199 (1973) (per curiam) (trial court's construction of the term "arrest" as including a traffic citation, and application of that construction to defendant to revoke his probation, was unforeseeable and thus violated due process); *Rabe v. Washington,* 405 U.S. 313, 316, 31 L. Ed. 2d 258, 92 S. Ct. 993 (1972) (per curiam) (reversing conviction under state obscenity law because it did "not give fair notice" that the location of the allegedly obscene exhibition was a vital element of the offense).

532 U.S. at 460.

*Rogers* and *Bouie* are not favorable to Petitioner's claim. He certainly cannot cogently assert that *Foster* made conduct criminal on his part which was not punishable before *Foster* was decided: felonious assault is a *malum in se* offense which has been criminal since at least the thirteenth century and the firearms offenses of which he was convicted have been criminal for many years in Ohio.

Petitioner's present sentence is not unconstitutional because the *Foster* remedy does not violate the Due Process Clause of the Fourteenth Amendment. First of all, the *Ex Post Facto* Clause is not directly applicable to retroactive court decisions, as the Supreme Court decided in *Rogers* and as Petitioner himself concedes in his Objections. Rather, the *Foster* severance remedy must be examined under the less stringent due process standards enunciated in *Rogers* and some of the *Bouie* progeny. *Foster* did not criminalize previously guiltless conduct as the South Carolina Supreme

Court had done in *Bouie*; Petitioner knew when he acted that it was a violation of Ohio criminal law to assault someone with a firearm. Indeed, Petitioner does not have as strong a due process case as the Petitioner in *Rogers* because *Foster* did not abolish any common-law defense on which he otherwise could have relied. Indeed, that the Ohio Supreme Court would find Senate Bill 2 unconstitutional on the basis of *Blakely v. Washington*, 542 U.S. 296 (2004), and then apply a severance remedy similar to what the United States Supreme Court did in *Booker*, seems eminently foreseeable, especially since *Foster* was decided shortly after *Booker*. Petitioner argues that Ohio has no sentencing range, but that is precisely what Senate Bill 2 provided and *Foster* allowed Ohio judges to select a sentence within that range without making the sort of findings prohibited by *Blakely*.

Thus the Court should dismiss Petitioner's first ground for relief whether or not it chooses to apply the doctrine of *stare decisis*.

**Ground Two**

In his Second Ground for Relief, Petitioner argues that the Ohio Supreme Court in *State v. Foster* eliminated the jurisdiction of Common Pleas Courts to impose consecutive sentences or invalidated the provisions of Ohio law authorizing consecutive sentences. In the Report and Recommendations, the Magistrate Judge concluded that it was a question of state law whether a particular court had subject matter jurisdiction to impose a particular criminal penalty, that felony sentencing in Ohio was committed to the Common Pleas Courts, and that the second ground was

without merit because Petitioner was sentenced for a felony by a Common Pleas Court.

Petitioner agrees that which courts have subject matter jurisdiction is a question of state law and federal courts are bound by state law, including state court determinations, on state law questions. He contends, however, that "[t]he Magistrate's analysis of Ohio law is clearly erroneous, as shown herein." (Objections, Doc. No. 3, at 6)

Petitioner begins with the unassailable proposition that Ohio does not recognize common law crimes. (Objections, Doc. No. 3, at 7, citing Ohio Revised Code § 2901.03 and *Mitchell v. State*, 42 Ohio St. 383 (1884).) He then argues that Common Pleas Courts have no authority to impose a punishment for a crime other than what the General Assembly has authorized; this too is good Ohio law. Then he argues that the Ohio Supreme Court did not know what it was doing in *Foster* and actually excised that portion of the Revised Code which authorized consecutive sentences.

¶ 4 of the syllabus in Foster reads: "R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial factfinding is not required before imposition of consecutive prison terms. (*United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, followed.)" In the body of the opinion at the place cited by Petitioner, the court wrote:

> [**P97] The following sections, because they either create presumptive minimum or concurrent terms or require judicial factfinding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial factfinding for maximum prison terms, and 2929.14(E)(4), which requires judicial findings for consecutive terms.

As the Magistrate Judge understands the Petitioner's argument, it is that (1) only Ohio Revised Code §§ 2929.14(E)(4) and 2929.41 authorize consecutive sentences and, (2) because *Foster* excises those

sections of the Code, there is no longer any authority to impose a consecutive sentence in Ohio.

The first flaw in Petitioner's reasoning is his claim that the power to impose consecutive sentences is solely a statutory creation. As the United States Supreme Court recognized in *Oregon v. Ice*, 555 U.S. ___, 129 S. Ct. 711 (2009), at common law in England and in the early United States, consecutive sentencing for multiple offenses was assumed and the authority to decide between concurrent and consecutive sentences was traditionally committed to the discretion of the trial judge. Oregon, like Ohio, had restricted that discretion by statute. In *Ice*, the Court held that such restrictions do not require factfinding by a jury and thus do not offend the *Apprendi-Blakely* line of cases. Retrospectively it appears the Ohio Supreme Court would not have had to find portions of S.B. 2 unconstitutional under *Blakely*.

But, says Petitioner, *Oregon v. Ice* is of no import in Ohio because Ohio has only statutory crimes. Here is Petitioner's second flaw: the fact that crimes are only statutory in Ohio does not mean that all criminal procedure is or must be statutory. In fact, much of Ohio criminal procedure is governed by common law or by the Ohio Rules of Criminal Procedure which are not passed by the legislature.

Petitioner's second ground for relief is also without merit and should be denied.

## CERTIFICATE OF APPEALABILITY

Petitioner's Third Objection is that the Magistrate Judge improperly recommended denying a certificate of appealability on a "blanket" basis. Petitioner is correct that issuance of blanket grants or denials of certificates of appealability is error, particularly if done before the petitioner requests

a certificate. *Porterfield v. Bell,* 258 F.3d 484(6th Cir. 2001); *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). However, the Magistrate Judge was neither granting nor denying a certificate but recommending action on any request to be made by the Petitioner. The resident District Judges at Dayton have requested that such recommendations be made in the original reports and recommendations in habeas corpus cases.

Petitioner's purported quotation from *Abshear v. Moore*, 2008 WL 262983 (S.D. Ohio 2008), is puzzling. (What appears at the cited Westlaw page is a patent application. The opinion from which the quotation is taken appears at 2008 WL 2622983). In that case the Magistrate Judge recommended granting the certificate of appealability as it had been requested in full because the Respondent did not oppose the request.

Here the recommendation is indeed "blanket" in the sense that it applies to both grounds for relief, but the Magistrate Judge is not aware of any jurist who has adopted or advocated for the position taken by Petitioner on either ground for relief. It is, accordingly, again recommended that any requested certificate of appealability on either of the two grounds for relief be denied. February 4, 2009.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of

law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).